# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **PATRICIA A. CONKLE,** )<br>Plaintiff )<br>)<br>v. )<br>)<br>)<br>)<br>**JO ANNE B. BARNHART,** )<br>**Commissioner of Social Security,** )<br>Defendant ) | <br><br><br>Civil Action No. 2:06cv00024<br>**MEMORANDUM OPINION**<br><br><br><br>By: PAMELA MEADE SARGENT<br>United States Magistrate Judge |

In this social security case, I affirm the final decision of the Commissioner denying benefits.

*I. Background and Standard of Review*

Plaintiff, Patricia A. Conkle, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 1381 *et seq.* (West 2003 & Supp. 2006). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings

-1-

of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Conkle protectively filed her application for SSI on or about August 13, 2003, alleging disability as of August 15, 2003, based on head trauma, loss of vision of the left eye, bipolar disorder, schizophrenia, blackouts, high blood pressure, anxiety, depression, obesity, a seizure disorder and headaches. (Record, ("R."), at 50, 52-54, 57, 87.) Conkle's claim was denied both initially and on reconsideration. (R. at 27-29, 32, 33-35.) Conkle then requested a hearing before an administrative law judge, ("ALJ"). (R. at 36.) The ALJ held a hearing on July 26, 2005, at which Conkle was represented by counsel. (R. at 457-91.)

By decision dated October 6, 2005, the ALJ denied Conkle's claim.[1] (R. at 15-19.) The ALJ found that Conkle had not engaged in substantial gainful activity since August 13, 2005. (R. at 19.) The ALJ found that the medical evidence established that Conkle had a severe impairment, namely a loss of vision in the left eye, but he found

---

[1] The record shows that Conkle filed a prior claim. (R. at 66.) By decision dated August 15, 2002, Conkle's caim was denied. (R. at 66.)

that Conkle did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19.) The ALJ further found that Conkle's allegations regarding her limitations were not totally credible. (R. at 19.) The ALJ found that Conkle had the residual functional capacity to perform work-related activities that did not require work involving binocular vision. (R. at 19.) The ALJ also found that Conkle could perform her past relevant work as a cook, a cleaner, a dishwasher, a pizza delivery person and a cab driver. (R. at 19.) Thus, the ALJ found that Conkle was not under a disability as defined in the Act, and that she was not eligible for SSI benefits. (R. at 19.) *See* 20 C.F.R. § 416.920(f) (2006).

After the ALJ issued his opinion, Conkle pursued her administrative appeals, (R. at 11), but the Appeals Council denied her request for review. (R. at 7-10.) Conkle then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2006). The case is before this court on Conkle's motion for summary judgment filed August 3, 2006, and the Commissioner's motion for summary judgment filed September 1, 2006.

*II. Facts*

Conkle was born in 1976, (R. at 52), which classifies her as a "younger person" under 20 C.F.R. § 416.963(c). Conkle obtained her general equivalency development, ("GED"), diploma, and has past relevant work experience as a cook, a housekeeper, a pizza delivery driver and a cab driver. (R. at 58, 63, 69, 109.) Conkle testified at her

hearing that she had not consumed alcoholic beverages during the previous eight months or longer. (R. at 469.) She stated that she had to present for routine urine screens as a result of her probation and that she had not failed a drug screen. (R. at 469-70.)

Dr. Edward Griffin, M.D., a medical expert, testified at Conkle's hearing. (R. at 475-77.) Dr. Griffin stated that Conkle had a history of temporal seizures, but never stayed in treatment. (R. at 475-76.) Dr. Griffin stated that both the seizures and headaches could be controlled with medication. (R. at 476.) He stated that Conkle went to Stone Mountain Health Services in June 2005 and seizures were not discussed. (R. at 476.) He stated that the record indicated that Conkle had a problem with establishing frequent ongoing treatment relationships. (R. at 476.) Dr. Griffin also noted that Conkle's recent medication list did not include medications for seizures or a headache prophylaxis. (R. at 476.)

Thomas Schacht, Ph.D., a psychological expert, also testified at Conkle's hearing. (R. at 477-81, 483-87.) Schacht testified that it was "entirely a credibility issue" whether Conkle's alleged mental impairment resulted in functional limitations. (R. at 481.) Schacht stated that there were conflicts in the record, which included Conkle's testimony that she lost consciousness and had post-traumatic amnesia after her 1991 car accident;[2] Conkle's testimony that she had to relearn to walk and talk;[3]

---

[2]Schacht noted that the hospital records specifically stated twice that Conkle did not lose consciousness. (R. at 477.)

[3]Schacht noted that this statement was not supported anywhere in the record. (R. at 477.)

-4-

Conkle's statements to others about being diagnosed with bipolar disorder;[4] Conkle's claim that she could not see a psychiatrist because she did not want to be alone with a male;[5] and Conkle's claim that she did not seek mental health care because she did not like to tell people about her problems.[6] (R. at 477-80.)

Norman Hankins, a vocational expert, also was present and testified at Conkle's hearing. (R. at 461, 481-83, 488-89.) Hankins was asked to consider a hypothetical individual who could perform simple, medium work[7] that required limited interaction and did not require fine visual acuity. (R. at 482.) Hankins testified that such an individual could perform jobs existing in significant numbers in the national economy, including those of a maid, a cleaner, a dishwasher, a laundry worker, a hand packer and a stock clerk. (R. at 482.) Hankins stated that there were a significant number of jobs available at the light[8] level of exertion that such an individual could perform. (R. at 482.) Hankins was then asked to assume an individual of Conkle's age, education and work experience, who was limited as indicated by the assessment of Robert

---

[4]Schacht pointed out that the neurologist did not diagnose Conkle with bipolar disorder. (R. at 477-78.)

[5]Schacht pointed out that Spangler, a male psychologist, evaluated Conkle and no difficulties were detailed in Spangler's report to indicate that Conkle had a problem being alone with him. (R. at 479.)

[6]Schacht noted that, in contrast to this claim, Conkle asked to see a psychiatrist and underwent a consultation in 2002 when she presented to St. Mary's Hospital. (R. at 479-80.)

[7]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If an individual can do medium work, she also can do sedentary and light work. *See* 20 C.F.R. § 416.967(c) (2006).

[8]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, she also can do sedentary work. *See* 20 C.F.R. § 416.967(b) (2006).

-5-

Spangler, Ed.D., a licensed psychologist. (R. at 400-02, 488.) He stated that there would be no jobs available that such an individual could perform. (R. at 488-89.)

In rendering his decision, the ALJ reviewed records from University of Virginia; St. Mary's Hospital; Frontier Health; Norton Community Hospital; B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist; Wise County Health Department; Dr. William F. Prestowitz, M.D.; Dr. Richard M. Surrusco, M.D., a state agency physician; R. J. Milan Jr., Ph.D., a state agency psychologist; Norton Community Hospital; Mountain View Regional Medical Center; Robert Spangler, Ed.D., a licensed psychologist; Dr. Mohammed Arshad Bhatti, M.D., a neurologist; Southwest Surgical Clinic; and Stone Mountain Health Services.

The record shows that Conkle was admitted to the University of Virginia on October 14, 1991, following a motor vehicle accident in which she sustained the loss of her left eye and multiple fractures. (R. 117-39.) Conkle underwent numerous reconstructive left eye surgeries. (R. at 140-59.)

The record shows that Conkle was seen at the Wise County Health Department from 2000 through 2005. (R. at 241-71, 386-92.) In May 2001, Conkle reported that she had not had a seizure since she was seven years old. (R. at 255.) In September 2003, Conkle complained of headaches and blurred vision. (R. at 246.) On December 16, 2003, Conkle reported problems with her "nerves" since her uncle sent her a picture of her aunt lying in a casket. (R. at 245.) On December 30, 2003, Conkle reported that her medications were helping with her symptoms of anxiety and depression. (R. at 244.) On March 3, 2004, Conkle complained of headaches with

occasional blurred vision. (R. at 242-43.)

On February 8, 2000, Dr. Mohammed Arshad Bhatti, M.D., a neurologist, examined Conkle for her complaints of headaches and black-out episodes. (R. at 407-08.) Conkle had normal bulk, tone and strength in all extremities. (R. at 407.) Dr. Bhatti diagnosed severe post concussion headaches, migraine headaches, new onset of complex partial seizures and severe depression. (R. at 407.) Conkle's diagnosis remained the same on March 7, 2000. (R. at 406.) On April 6, 2000, Dr. Bhatti continued to diagnosis migraine headaches and noted that Conkle had been seizure-free. (R. at 405.)

The record shows that Conkle presented to Frontier Health in January 2001 because she was ordered by the Wise County Department of Social Services and Wise County court system to attend individual therapy and parenting classes after her children were removed from Conkle's custody based on allegations of neglect and sexual molestation. (R. at 193-97.) At that time, Conkle also had been arrested four times for passing bad checks. (R. at 192.) Conkle was assessed a Global Assessment of Functioning, ("GAF"), score of 45.[9] (R. at 204.) Conkle was diagnosed with polysubstance abuse. (R. 197.) In June 2001, Conkle denied having mental or psychiatric problems. (R. at 181-82.) By August 2001, Conkle abandoned treatment. (R. at 177-78, 180.) The record shows that Conkle next contacted Frontier Health in

---

[9]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning ...." DSM-IV at 32.

February 2003, however, there is no evidence that she attended her first scheduled appointment or any other appointments. (R. at 175-76.) It was noted on July 2, 2004, that Conkle was visually and literacy impaired. (R. at 428.) Conkle was diagnosed with bipolar disorder and post-traumatic stress disorder on June 23, 2005. (R. at 424-25.) Her GAF score was assessed at 50. (R. at 424.)

The record shows that Conkle was admitted to St. Mary's Hospital on November 4, 2002, for complaints of severe headaches and infection of her left eye prosthesis. (R. at 160-74.) Conkle's depressive symptoms were reported to be mild. (R. at 163.) Conkle was prescribed medication for bipolar disorder. (R. at 163.) On November 8, 2002, Conkle reported that she was feeling better as far as her bipolar symptoms were concerned. (R. at 162.) She was discharged on November 8, 2002, with a diagnosis of infected left eye prosthesis, rhinosinusitis, hypertension and bipolar disorder. (R. at 161-62.) On December 15, 2003, Conkle presented to the emergency room for complaints of panic attacks. (R. at 305-09.) She reported increased stress at work and the death of a family member.[10] (R. at 306.) She reported that she had been diagnosed with bipolar disorder, which was then repeated as her diagnosis along with polysubstance abuse. (R. at 305-06.) On March 8, 2004, Conkle complained of headaches and "blackout spells." (R. at 237.) She was diagnosed with headaches, and no limitations were noted. (R. at 238.)

On March 30, 2004, B. Wayne Lanthorn, Ph.D., a licensed clinical

---

[10]Conkle reported that her "favorite uncle" had passed away. (R. at 306.) When seen at the Wise County Health Department the next day, Conkle reported that she was having problems with her "nerves" since her uncle sent her a picture of her aunt lying in a casket. (R. at 245.)

-8-

psychologist, evaluated Conkle at the request of Disability Determination Services. (R. at 225-31.) Lanthorn reported that Conkle related appropriately and that she should be able to relate adequately with others. (R. at 229.) Lanthorn reported that Conkle's description of her symptoms did not meet the criteria for bipolar disorder. (R. at 228.) Lanthorn diagnosed polysubstance dependence in partial full remission with occasional use of alcoholic beverages, dysthymic disorder and personality disorder, not otherwise specified. (R. at 229.) Lanthorn assessed a GAF score of 65.[11] (R. at 229.) Lanthorn reported that Conkle could understand and remember. (R. at 229.) He reported that Conkle could attend and concentrate. (R. at 229.) Lanthorn reported that Conkle could work in coordination with others and in proximity to others without being distracted by them. (R. at 229-30.) He reported that Conkle was able to maintain socially appropriate behavior, to meet basic standards of neatness and cleanliness and to interact appropriately with others. (R. at 230.) Lanthorn reported that Conkle may have some difficulty dealing with stress because she had a poor self-concept relating to the loss of an eye and mild depression. (R. at 230.)

On April 13, 2004, Dr. William F. Prestowitz, M.D., examined Conkle at the request of Disability Determination Services. (R. at 232-34.) Conkle had corrected vision of 20/20 in her right eye.[12] (R. at 232.) Her right eye was completely normal. (R. at 232.) A visual field test showed a gun-barrel visual field. (R. at 233.) Dr.

---

[11]A GAF of 61-70 indicates that "[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ... , but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 32.

[12]Dr. Prestowitz's report states that Conkle has corrected vision of 20/20 in her "left" eye which is impossible since she lost her left eye in 1991 and wears a prosthetic eye in the left socket.

Prestowitz reported that Conkle was exaggerating her symptoms concerning her right eye. (R. at 233.) Dr. Prestowitz reported that Conkle could function successfully at any employment that did not require binocular vision. (R. at 233.)

On May 3, 2004, Dr. Richard M. Surrusco, M.D., a state agency physician, indicated that Conkle had no exertional limitations. (R. at 272-79.) He also indicated that Conkle had no postural, manipulative or communicative limitations. (R. at 275-76.) Dr. Surrusco indicated that Conkle had visual limitations in her left eye. (R. at 276.) He indicated that Conkle should avoid all exposure to working around hazards, such as machinery and heights. (R. at 277.) This assessment was affirmed by Dr. Frank M. Johnson, M.D., another state agency physician, on September 22, 2004. (R. at 279.)

On May 4, 2004, R. J. Milan Jr., Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), indicating that Conkle suffered from a nonsevere affective disorder. (R. at 280-95.) Milan indicated that Conkle had mild limitations in her ability to perform activities of daily living, to maintain social functioning and to maintain concentration, persistence or pace. (R. at 290.) He also indicated that Conkle had experienced no episodes of decompensation. (R. at 290.) This assessment was affirmed by E. Hugh Tenison, Ph.D., another state agency psychologist, on September 22, 2004. (R. at 280.)

On January 24, 2004, Conkle presented to the emergency room at Norton Community Hospital for complaints of headaches. (R. at 341-44.) She was diagnosed with a headache and discharged home in improved condition. (R. at 341-44.) On

August 26, 2004, Conkle presented to the emergency room for complaints of headaches, shortness of breath and tingling in the left side of face and arm. (R. at 337-39.) She was diagnosed with numbness on the left side and to rule out cerebral vascular accident. (R. at 338.)

On April 27, 2005, Robert Spangler, Ed.D., a licensed psychologist, evaluated Conkle at the request of Conkle's attorney. (R. at 393-97.) Spangler reported that Conkle was depressed, sad in appearance and slightly anxious. (R. at 395.) The Wechsler Adult Intelligence Scale-Third Edition, ("WAIS-III"), test was administered, and Conkle obtained a verbal IQ score of 81, a performance IQ score of 83 and a full-scale IQ score of 80. (R. at 396, 398.) Spangler diagnosed alcohol abuse in full remission, polysubstance dependence in full remission and bipolar disorder, moderate. (R. at 397.) Spangler indicated that Conkle had a GAF score of 55.[13] (R. at 397.)

Spangler completed a mental assessment indicating that Conkle had a limited but satisfactory ability to understand, remember and carry out simple instructions. (R. at 400-02.) He indicated that Conkle had a limited but satisfactory ability to a seriously limited, but not precluded, ability to use judgment, to interact with supervisors, to function independently, to maintain attention/concentration and to maintain personal appearance. (R. at 400-01.) Spangler indicated that Conkle had a seriously limited, but not precluded, ability to follow work rules, to relate to co-workers, to deal with the public, to deal with work stress, to understand, remember and carry out detailed instructions, to behave in an emotionally stable manner and to

---

[13]A GAF of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

relate predictably in social situations. (R. at 400-01.) He also indicated that Conkle had no useful ability to understand, remember and carry out complex instructions and to demonstrate reliability. (R. at 401.) Spangler reported that Conkle could not manage her own benefits. (R. at 402.) He reported that Conkle's impairments would cause her to miss more than two days of work a month. (R. at 402.)

The record shows that Conkle was seen at Stone Mountain Health Services on June 2, 2005, for complaints of stomach pain. (R. at 444-46.) She was diagnosed with a rash and abdominal pain. (R. at 444.) On July 8, 2005, Conkle complained of headaches and fatigue. (R. at 441-42.) She was diagnosed with abdominal pain, rash, urinary tract infection, fatigue and headaches. (R. at 441.)

### III. Analysis

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2006); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 416.920 (2006). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 416.920(a) (2006).

Under this analysis, a claimant has the initial burden of showing that she is

-12-

unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2006); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated October 6, 2005, the ALJ denied Conkle's claim. (R. at 15-19.) The ALJ found that Conkle had not engaged in substantial gainful activity since August 13, 2005. (R. at 19.) The ALJ found that the medical evidence established that Conkle had a severe impairment, namely a loss of vision in the left eye, but he found that Conkle did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19.) The ALJ further found that Conkle's allegations regarding her limitations were not totally credible. (R. at 19.) The ALJ found that Conkle had the residual functional capacity to perform work-related activities that did not require work involving binocular vision. (R. at 19.) The ALJ also found that Conkle could perform her past relevant work as a cook, a cleaner, a dishwasher, a pizza delivery person and a cab driver. (R. at 19.) Thus, the ALJ found that Conkle was not under a disability as defined in the Act, and that she was not eligible for SSI benefits. (R. at 19.) *See* 20 C.F.R. § 416.920(f) (2006).

In her brief, Conkle argues that the ALJ erred by improperly determining her

-13-

residual functional capacity. (Plaintiff's Motion For Summary Judgment And Memorandum Of Law, ("Plaintiff's Brief"), at 6-9.) Conkle also argues that the ALJ erred by failing to find that she suffered from a severe mental impairment. (Plaintiff's Brief at 9-12.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

Conkle argues that the ALJ erred by failing to find that she suffered from a

-14-

Case 2:06-cv-00024-PMS   Document 15   Filed 12/19/06   Page 14 of 17   Pageid#: 96

severe mental impairment. (Plaintiff's Brief at 9-12.) The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. § 416.921(a) (2006). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. § 416.921(b) (2006). The Fourth Circuit held in *Evans v. Heckler*, that, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)) (emphasis in original).

Based on my review of the record, I find that substantial evidence exists to support the ALJ's finding that Conkle did not suffer from a severe mental impairment. The record shows that other than her court-ordered therapy, which she abandoned, Conkle did not attend treatment with a mental health professional. (R. at 177-78, 180.) While Conkle was diagnosed with a GAF score of 45 in January 2001, she also was diagnosed with polysubstance abuse. (R. at 197, 204.) In June 2001, Conkle denied having mental or psychiatric problems. (R. at 181-82.) While hospitalized in November 2002, Conkle's depressive symptoms were reported to be mild. (R. at 163.) Conkle reported in 2003 that medication helped her symptoms of anxiety and depression. (R. at 244.) "If a symptom can be reasonably controlled by medication

-15-

or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). In March 2004, Lanthorn reported that Conkle's description of her symptoms did not meet the criteria for bipolar disorder. (R. at 228.) Lanthorn assessed Conkle's GAF score at 65, which indicates only mild symptoms. (R. at 229.) Milan, a state agency psychologist, also indicated that Conkle had only mild limitations in her ability to perform activities of daily living, to maintain social functioning and to maintain concentration, persistence or pace. (R. at 290.) In April 2005, Spangler diagnosed Conkle with alcohol abuse and polysubstance abuse, both in full remission and bipolar disorder. (R. at 397.) He placed various limitations on Conkle's performance, social and occupational activities. (R. at 400-02.) The ALJ found that Spangler's assessment and GAF rating were not consistent with the other evidence of record. (R. at 18.) In addition, the mental health expert testified at Conkle's hearing that it was "entirely a credibility issue" whether Conkle's alleged mental impairment resulted in functional limitations. (R. at 481.) He also outlined numerous conflicts between Conkle's testimony and the evidence of record. (R. at 477-81.) Based on this, I find that substantial evidence exists to support the ALJ's finding that Conkle did not suffer from a severe mental impairment.

Conkle also argues that the ALJ erred by improperly determining her residual functional capacity. (Plaintiff's Brief at 6-9.) The ALJ found that Conkle had the residual functional capacity to perform work-related activities that did not require work involving binocular vision. (R. at 19.) Based on my review of the record, I find that substantial evidence exists to support this finding. Dr. Vaught, an examining neurologist, described Conkle as "well appearing and in no distress." (R. at 222.) With the exception of a prosthetic left eye, Conkle's neurological examination was

essentially normal. (R. at 222.) Conkle reported in May 2001 that she had not had a seizure since she was seven years old. (R. at 255.) While she was seen at the emergency room in March 2004 and diagnosed with headaches, no limitations were placed on her as a result. (R. at 238.) Dr. Griffin testified at Conkle's hearing that Conkle's medication list did not include medications for seizures or headache prophylaxis. (R. at 476.) He stated that Conkle's headaches and seizures could be controlled with medication. (R. at 476.) Based on this, I find that substantial evidence exists to support the ALJ's finding that Conkle had the residual functional capacity to perform her past relevant work as a cook, a cleaner, a dishwasher, a pizza delivery person and a cab driver.

*III. Conclusion*

For the foregoing reasons, Conkle's motion for summary judgment will be denied, the Commissioner's motion for summary judgment will be granted and the Commissioner's decision denying benefits will be affirmed.

An appropriate order will be entered.

DATED: This 19th day of December 2006.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE